IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

DEC 29 2010

COURT OF APPEALS
DIVISION TWO

JAMES E. BLAIR and SOUTHERN          )
VENTURES, INC.,                      )
                                     )
                  Plaintiffs/Appellees,  )        2 CA-CV 2010-0028
                                     )        DEPARTMENT B
            v.                       )
                                     )        O P I N I O N
CLIFTON BURGENER and JANE DOE        )
BURGENER, husband and wife;          )
TIGERLILLY INVESTMENTS, LLC; and     )
BONANZA REALTY MANAGEMENT,           )
LLC,                                 )
                                     )
                  Defendants/Appellants.  )
  _____ )

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause No. CV200800466

Honorable James L. Conlogue, Judge
Honorable Ann R. Littrell, Judge

AFFIRMED

Peter A. Kelly                                              Palominas
                                    Attorney for Plaintiffs/Appellees

Lawrence K. Lynde                                            Phoenix
                                    Attorney for Defendants/Appellants

V Á S Q U E Z, Presiding Judge.

¶1 In this breach of contract action, appellants Clifton Burgener; Tigerlilly Investments, LLC; and Bonanza Realty Management, LLC (collectively, Appellants) appeal from the trial court's denial of their motion to set aside default judgment in favor of appellees, James Blair and Southern Ventures, Inc. (collectively, Blair). Appellants contend the court abused its discretion in permitting alternative means for service of process and, in any event, Blair failed to effect service properly under the terms of the court's order. For the reasons set forth below, we affirm.

**Facts and Procedure**

¶2 "We view the facts in the light most favorable to upholding the trial court's ruling on a motion to set aside a default judgment." *Ezell v. Quon*, 224 Ariz. 532, ¶ 2, 233 P.3d 645, 647 (App. 2010); *see also Goglia v. Bodnar*, 156 Ariz. 12, 20, 749 P.2d 921, 929 (App. 1987). In May 2007, Blair entered into a contract with Tigerlilly and Bonanza, which included the conveyance of Blair's residence to Tigerlilly. Pursuant to the contract, Tigerlilly was required to transfer the residence back to Blair upon his performance of additional terms in the contract. In May 2008, Blair filed a complaint in superior court, alleging breach of contract, civil conspiracy, and fraud against Appellants, arising from their failure to reconvey the residence to him. Blair also alleged Burgener controlled and operated Tigerlilly and Bonanza as his alter egos.[1]

---

[1]Blair later filed an amended complaint adding additional defendants. However, they are not parties to this appeal.

¶3 Blair made numerous attempts to serve Appellants by attempting to serve Burgener individually and as statutory agent for Tigerlilly and Bonanza, at Appellants' business address in Phoenix. On May 21, 2008, the process server went to Appellants' office and was told Burgener "was not in." Although it is unclear from the record, the process server either telephoned or visited the office seven times over the following two weeks, between 9:30 a.m. and 1:40 p.m., in an attempt to determine whether Burgener was there. Each time the process server was told Burgener was not in the office. Blair then authorized the process server to attempt to locate Burgener's home address and serve him there. The process server located Burgener's residence in Phoenix, confirming with a neighbor that Burgener indeed lived at that address, and attempted to serve him there five times over the next eight days, between 4:10 p.m. and 8:40 p.m.

¶4 After the attempts at personal service were unsuccessful, Blair filed a motion for alternate service, in which he alleged Appellants were attempting to avoid service and requested permission to effect service "upon any person in charge of the office located at 40[2] W. Roosevelt, Suite E, Phoenix, AZ."[2] He supported his motion with the process server's affidavit of non-service, describing the failed attempts to effect service. The trial court granted the motion and, in addition to allowing Blair to serve the person in charge of the office, it also ordered Blair to mail a copy of the process and the

[2]Blair's motion and the trial court's order list the business address as "400 W. Roosevelt, Suite E, Phoenix, AZ." However, as Blair states in his brief, this appears to have been a clerical error, given that the process server had initially attempted service at 402 W. Roosevelt, and there is no dispute concerning the correct business address of Appellants. And, although the process server apparently initially mailed service to 400 W. Roosevelt, this mistake was rectified by re-mailing service to the correct address.

court's order "to the last known residence or business address of each party receiving alternate service."

¶5 The process server served Appellants at the business address by leaving copies of the required documents with a woman working at the front desk of the office. The woman gave her first name to the process server but refused to provide her last name or proof of identity. He also mailed copies of the process to the business address. After the time for responding had passed, Blair filed an application for entry of default judgment, and the trial court entered default judgment on November 12, 2008, in the amount of $252,000.

¶6 On June 22, 2009, Appellants filed a motion to set aside the entry of default, asserting that they had not been properly served under the Arizona Rules of Civil Procedure and the judgment therefore was void. After oral argument, the trial court denied their motion. This appeal followed.

**Standard of Review**

¶7 Although default judgments are not favored, *Harper v. Canyon Land Dev., L.L.C.*, 219 Ariz. 535, ¶ 4, 200 P.3d 1032, 1033-34 (App. 2008), we review a trial court's denial of a motion to set aside a default judgment for an abuse of discretion, *Daou v. Harris*, 139 Ariz. 353, 359, 678 P.2d 934, 940 (1984). Generally, a party will only be entitled to relief if it can demonstrate: "1) that its failure to file a timely answer was excusable under one of the subdivisions of Rule 60(c), 2) that it acted promptly in seeking relief and 3) that it had a substantial and meritorious defense to the action."

*Almarez v. Superior Court*, 146 Ariz. 189, 190-91, 704 P.2d 830, 831-32 (App. 1985). However, a trial court "must vacate . . . a [void] judgment[,] . . . [and] a party seeking relief from a void judgment need not show that their failure to file a timely answer was excusable, that they acted promptly . . . , or that they had a meritorious defense." *Master Fin., Inc. v. Woodburn*, 208 Ariz. 70, ¶ 19, 90 P.3d 1236, 1240 (App. 2004). Even where a judgment is challenged on voidness grounds, "[t]he movant generally bears the burden of demonstrating his entitlement to have a default judgment set aside." *Miller v. Nat'l Franchise Servs., Inc.*, 167 Ariz. 403, 406, 807 P.2d 1139, 1142 (App. 1991).

**Discussion**

¶8　　　　Appellants maintain the trial court abused its discretion by not setting aside the default judgment, arguing it was void for lack of personal jurisdiction over them. *See* Ariz. R. Civ. P. 60(c)(4) (party may be relieved from void final judgment); *Master Fin. Inc.*, 208 Ariz. 70, ¶ 19, 90 P.3d at 1240 (lack of personal jurisdiction over defendants renders judgment void). In particular, they contend service of process had not been made upon them. Although Appellants assign ten different issues on appeal, the essential questions raised are (1) whether the court erred in concluding Blair had demonstrated that personal service was impracticable under Rule 4.1(m), Ariz. R. Civ. P., such that alternate service was appropriate, (2) whether the means of alternate service authorized by the court violated Appellants' due process rights, and (3) whether Blair sufficiently complied with the court's order of alternate service. We address each of these issues in turn.

5

¶9 Preliminarily, we note that Appellants have not provided this court with a transcript of the hearing on their motion to set aside judgment. It is the appellant's burden to ensure that "the record on appeal contains all transcripts or other documents necessary for us to consider the issues raised." *Baker v. Baker*, 183 Ariz. 70, 73, 900 P.2d 764, 767 (App. 1995); *see also* Ariz. R. Civ. App. P. 11(b)(1). And, in the absence of a transcript, we presume the evidence and arguments presented at the hearing support the trial court's ruling. *Kohler v. Kohler*, 211 Ariz. 106, n.1, 118 P.3d 621, 623 n.1 (App. 2005); *Chavarria v. State Farm Mut. Auto. Ins. Co.*, 165 Ariz. 334, 338, 798 P.2d 1343, 1347 (App. 1990).

## A. Alternate service

¶10 Appellants first contend Blair failed to make the requisite showing under Rule 4.1(m) to establish service upon them was impracticable, such that he was entitled to effect service through alternate means. Appellants maintain, as to Tigerlilly and Bonanza, that personal service can never be impracticable. Relying on Rule 4.1(l), they contend that when service cannot be completed by serving the statutory agent of a corporation, the plaintiff is required to effect service through the Arizona Corporation Commission. But Rule 4.1(l) applies only "[w]hen a domestic corporation does not have an officer or agent in this state upon whom legal service of process can be made."[3] Here,

---

[3]And in any event, this means of completing service would have provided no greater due process protection than the manner of service authorized by the trial court and employed by Blair, who delivered process to the defendants' office and mailed a copy to the business address. Under Rule 4.1(l), when service is made by depositing the summons and pleadings with the Corporation Commission, it "shall file one of the copies

6

Appellants do not dispute that Burgener is the statutory agent for both companies. Thus, Rule 4.1(l) does not apply.

¶11 Rule 4.1(m) provides, in pertinent part: "If service by one of the means set forth in the preceding paragraphs of this Rule 4.1 proves impracticable, then service may be accomplished in such manner, other than by publication, as the court, upon motion and without notice, may direct."

¶12 There are no Arizona cases interpreting the meaning of "impracticable" as that term is used in the rule. This court's "purpose is to interpret the statutes and rules according to the drafters' intent, and we will first look to the plain language of the statute or rule as the best evidence of that intent." *Hornbeck v. Lusk*, 217 Ariz. 581, ¶ 6, 177 P.3d 323, 325 (App. 2008). When "the language is clear and unambiguous, we give effect to that language and do not employ other methods of statutory construction." *Fragoso v. Fell*, 210 Ariz. 427, ¶ 7, 111 P.3d 1027, 1030 (App. 2005).

¶13 Relying on *Calabro v. Leiner*, 464 F. Supp. 2d 470, 472 (E.D. Penn. 2006), Appellants contend service of process is only impracticable "when personal service absolutely cannot be made under the applicable rules of civil procedure." And, they suggest that four attempts at service at Burgener's residence were insufficient as a matter

---

in its office and immediately mail the other copy, postage prepaid, to the office of the corporation, or to the president, secretary or any director or officer of such corporation as appears or is ascertained by the Corporation Commission from the articles of incorporation or other papers on file in its office, or otherwise."

of law to "warrant alternative service."[4]  In *Calabro*, the court was interpreting Rule 430(a), Penn. R. Civ. P., to determine whether the plaintiff had made reasonable efforts to effect personal service on the defendant before resorting to alternative means.  The rule provides:

> If service cannot be made under the applicable rule[,] the plaintiff may move the court for a special order directing the method of service.  The motion shall be accompanied by an affidavit stating the nature and extent of the investigation which has been made to determine the whereabouts of the defendant and the reasons why service cannot be made.

Based on its interpretation of the rule, the court determined that alternative service is only appropriate when the plaintiff has demonstrated a good faith effort to locate the defendant, has made "practical efforts" to effectuate service of process, and the proposed alternative means are "reasonably calculated to provide the defendant with notice of the proceedings against him."  464 F. Supp. 2d at 472-73.  In applying the "practical efforts" requirement to the facts before it, the court concluded the plaintiff's three attempts at service, two of which were on the same day of the week, and occurred within the same

---

[4]Appellants also heavily rely on cases dealing with service by publication pursuant to Rule 4.1(n), and they apparently seek to import into the standard of impracticability the requirement of due diligence in locating a defendant before effecting service by publication.  *See, e.g.*, *Barlage v. Valentine*, 210 Ariz. 270, ¶ 8, 110 P.3d 371, 374 (App. 2005); *Sprang v. Petersen Lumber, Inc.*, 165 Ariz. 257, 261-62, 798 P.2d 395, 399-400 (App. 1990).  However, even assuming the reasoning of these cases applies outside the service-by-publication context, a proposition we doubt, the issue in this case is not Blair's ability to locate the defendants.  Blair independently confirmed that Burgener actually resided at the residential address through a neighbor, and Blair was consistently told that Burgener was not present in the office at 402 W. Roosevelt—not that Burgener did not work there.  Blair thus met any requirement for due diligence and indeed was successful in locating the defendants for the purpose of service of process.

8

ninety-minute period of time, were insufficient to "meet her burden of showing that she ha[d] undertaken practical efforts to serve the defendants under the circumstances." *Id.* at 473.

¶14        *Calabro* is distinguishable from this case. Unlike our Rule 4.1(m), Rule 430, Penn. R. Civ. P., permits alternative service only when "service cannot be made under the applicable rule" and also requires an affidavit detailing the plaintiff's efforts to locate and serve the defendant. These requirements are more closely akin to the heightened "due diligence" showing necessary for service by publication in Arizona. *See* Ariz. R. Civ. P. 4.1(n) ("party or officer making service shall file an affidavit showing the manner and dates of the publication and mailing, and the circumstances warranting the utilization of the procedure); *Sprang v. Petersen Lumber, Inc.*, 165 Ariz. 257, 261, 798 P.2d 395, 399 (App. 1990) (before service by publication, party must file "affidavit setting forth facts indicating it made a due diligent effort to locate an opposing party to effect personal service"). Thus we do not find *Calabro* instructive.

¶15        Relying on *Kelly v. Lewis*, 632 N.Y.S.2d 186, 186 (App. Div. 1995), Blair contends "the standard of impracticability is different from the more stringent one of 'due diligence.'" The service of process rule at issue in that case gives trial courts "discretion to direct alternative service of process . . . when it has determined that the methods set forth [in the service of process statute] are 'impracticable.'" 632 N.Y.S.2d at 485. And in *Kelly*, the New York Appellate Division defined the standard of impracticability as "different from the more stringent one of 'due diligence' . . . . That is, to meet the

standard on impracticability does not require satisfying due diligence, or even showing that actual prior attempts to serve a party under each and every method provided in the statute have been undertaken[.]" *Id.* (citing cases). Applying this standard, the court concluded that three attempts at service on three different days constituted sufficient efforts to warrant alternative means of service. *Id.* at 486.

¶16 Like the rule in *Kelly*, Rule 4.1(m), Ariz. R. Civ. P., permits alternative service of process when traditional service is "impracticable" under the circumstances. And, we agree this standard requires something less than the "due diligence" showing required before service by publication may be utilized. If the drafters of Rule 4.1(m) had intended plaintiffs to meet the same burden of establishing due diligence for alternative service as for service by publication, it would have used the same language and included the same requirements in both subsections. *See Fragoso*, 210 Ariz. 427, ¶ 12, 111 P.3d at 1031.

¶17 Other courts, in various contexts, have held the term "impracticable" "does not mean that . . . impossibility . . . must be established," but rather requires a showing that the act to be performed "is extremely difficult or inconvenient." *Pac. Fire Ins. Co. v. Reiner*, 45 F. Supp. 703, 708 (E.D. La. 1942) (interpreting numerosity requirement for class certification under federal rules of procedure); *see also Garner v. Ellingson*, 18 Ariz. App. 181, 182, 501 P.2d 22, 23 (1972) (doctrine of commercial frustration "not necessarily limited to strict impossibility, but includes impracticability caused by extreme or unreasonable difficulty or expense"); *Gen. Motors Corp. v. Superior Court*, 416 P.2d

10

492, 496 (Cal. 1966) (equating impracticability with futility, not impossibility, in addressing statute of limitations argument); *Bldg. Indus. Ass'n of San Diego County v. State Water Res. Control Bd.*, 22 Cal. Rptr. 3d 128, 138, 145 (Cal. App. 2004) (in discussing whether water permit requirements "impracticable or unreasonable," noting "practicable" something more than "possible"; impracticability means difficulty or inconvenience, not impossibility). This interpretation of the word impracticable also is consonant with its use in Rule 4.1(m), in that the showing for alternative service requires something less than a complete inability to serve the defendant because the defendant's current address is unknown or the defendant completely has avoided service of process. *See* Rule 4.1(n) (describing conditions necessary to permit service by publication).

¶18 Here, Blair attempted service at both Appellants' place of business and Burgener's residence on five different days and at various times. In addition to these physical attempts, the process server attempted to ascertain over an additional seven days whether Burgener was present in the office so that service could be made. Each time he was told Burgener was not in the office.[5] These circumstances demonstrate that service of process through the usual means would have been "extremely difficult or inconvenient." *See Pac. Fire Ins. Co.*, 45 F. Supp. at 708. And, to the extent additional evidence and argument were presented at the hearing on Appellants' motion to set aside

---

[5]These efforts are far more substantial than the efforts found insufficient in the three out-of-state cases Appellants cite in support of their argument. *See Calabro*, 464 F. Supp. 2d at 473 (three attempts insufficient); *Lombay v. Padilla*, 895 N.Y.S.2d 503, 505 (N.Y. App. Div. 2010) (three attempts over four days and affixing notice to wrong door insufficient); *Austin v. Tri-County Mem'l Hosp.*, 834 N.Y.S.2d 419, 420 (N.Y. App. Div. 2007) (three attempts on consecutive weekday afternoons insufficient).

the default, we presume they support the trial court's ruling. *Kohler*, 211 Ariz. 106, n.1, 118 P.3d at 623 n.1. On this record, we therefore cannot say the court abused its discretion in permitting Blair to serve Appellants through alternate means.

**B. Adequacy of service**

¶19        Appellants next argue that the means of alternative service authorized by the trial court and as effected by Blair—which they characterize as "[a]lternative process upon a receptionist in an eight office building"—did not comply with constitutional due process. Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).[6]

¶20        Rule 4.1(m) provides that when alternate means of service of process are employed, "reasonable efforts shall be undertaken by the party making service to assure that actual notice of the commencement of the action is provided to the person to be served," and the service of process "shall be mailed to the last known business or

---

[6]Relying on a state bar committee note pertaining to service by publication, Appellants argue Blair was required to effect service by "'the best means of notice practicable under the circumstances.'" Ariz. R. Civ. P. 4.1, committee note, *citing Mullane*, 339 U.S. 306 (1950). Not only is this comment limited to notice by publication, and inapplicable here, but this is not the standard promulgated in *Mullane*. *Mullane* held only that "notice by publication was constitutionally defective as to known persons whose whereabouts were also known" because such notice is not reasonably calculated to apprise them of pending litigation, while other, more effective methods of notice—notably "the mails"—are available. *Dusenbery v. United States*, 534 U.S. 161, 162, 162 n.4 (2002), *citing Mullane*, 339 U.S. at 314, 319.

residential address of the person to be served." These two requirements ensure that a defendant's due process rights have been satisfied. Appellants present no argument that the trial court's order authorizing service upon "any person in charge of the office" in which each of them conducted business, and by first-class mail to that address, was not reasonably calculated to inform them of the pending litigation.[7] We conclude the court's order was consistent with the requirements of due process.

¶21    Appellants' primary jurisdictional challenge appears to be focused on whether Blair's actual means of service comported with due process. The trial court's order for alternative service authorized personal service on any person "in charge of the office." In denying Appellants' motion to set aside the default judgment, the court necessarily rejected their arguments that service by first-class mail and personal service upon "any person in charge of the office" were not reasonable measures to inform Appellants of the pending litigation.

---

[7]To the extent Appellants argue service was deficient because it was not sent by certified mail, we observe that the trial court did not specify any particular manner of mailing, and Appellants do not argue certified mail was required pursuant to any other authority. And, contrary to their assertion that "there is no proof that any of the documents [Blair's] process server allegedly mailed to . . . 402 W. Roosevelt were actually received by any of the Defendants," the process server's affidavit that he had mailed the process to the correct address constituted substantial evidence. *See Lee v. State*, 218 Ariz. 235, ¶ 11, 182 P.3d 1169, 1171-72 (2008) ("[A]lthough a denial of receipt rebuts the legal presumption that a piece of mail was received, a factfinder may still infer from the fact of mailing that the mail did reach its destination."). Thus, faced with the process server's affidavit of service and Appellants' affidavits denying receipt, it was for the trial court to determine which evidence was more credible. *See Reliable Elec. Co. v. Clinton Campbell Contractor, Inc.*, 10 Ariz. App. 371, 373, 459 P.2d 98, 100 (1969).

¶22 Although Appellants describe the person served as a "receptionist," Blair described her in his opposition to the motion to set aside the default as "the 'front desk' woman at 402 Roosevelt, Suite E." Appellants do not dispute that "402 Roosevelt, Suite E" is their business address.

¶23 In denying Appellants' motion to set aside the default judgment, the trial court necessarily rejected their arguments that the service Blair employed was inconsistent with either the court's order or due process. "Service of process can be impeached only by clear and convincing evidence." *Gen. Elec. Capital Corp. v. Osterkamp*, 172 Ariz. 191, 194, 836 P.2d 404, 407 (App. 1992); *see also Hilgeman v. Am. Mortgage Secs., Inc.*, 196 Ariz. 215, ¶ 14, 994 P.2d 1030, 1034 (App. 2000) (same). And this court will not "second-guess or substitute our judgment for that of the trial court" on questions of disputed fact. *Gen. Elec. Capital Corp. v. Osterkamp*, 172 Ariz. 185, 188, 836 P.2d 398, 401 (App. 1992). Because Appellants have failed to provide a transcript of the hearing on their motion, we cannot say the court erred in concluding that Appellants failed to sustain their burden or that, under the circumstances, due process considerations had been satisfied and "service upon [Appellants] was adequate." *Kohler*, 211 Ariz. 106, n.1, 118 P.3d at 623 n.1.

## C. Compliance with order for service

¶24 Finally, Appellants contend that by not mailing a copy of the process to Burgener's residential address and by not enumerating the documents re-mailed to the correct address of 402 W. Roosevelt in the affidavit of service, Blair did not comply

14

strictly with the trial court's order for alternate service and therefore did not "make a prima facie showing of compliance with the requirements of Rule 4.1(m)." However, the court's order authorized Blair to serve each of the Appellants by "mail[ing the process] to the last known residence *or* business address of each party receiving alternate service." (Emphasis added.) Blair mailed the process to 402 W. Roosevelt, Suite E, and Burgener has not disputed that this is his business address. Blair thus strictly complied with this term of the court's order.

¶25        Additionally, the original affidavit of service specifically listed the documents served in person upon the woman at the front desk and stated a second copy of the process was mailed to the "above address." The mailed copies apparently were returned due to an incorrect address, but the process server's affidavit indicated "the documents" were "re-mailed" to the correct address and not returned. Viewed in this context, it is abundantly clear that the process server re-mailed the same documents listed in the original service of process. Blair therefore complied in full with the court's order for alternate service.

## Disposition

¶26        Because the trial court did not abuse its discretion in permitting alternative service by the means employed, it had jurisdiction over Appellants. The entry of default judgment thus was not void, and Appellants made no other showing of excusable neglect that would entitle them to relief under Rule 60(c), Ariz. R. Civ. P. *See Almarez v. Superior Court*, 146 Ariz. 189, 190-91, 704 P.2d 830, 831-32 (App. 1985). The court

15

therefore did not abuse its discretion in denying Appellants' motion to set aside the default judgment.  The default judgment against Appellants is affirmed.

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

CONCURRING:

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Judge

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge