DISSENTING OPINION BY
Judge LEAVITT.
Respectfully, I dissent from the majority’s construction and' application of Section 601(a)(3) of the Real Estate Tax Sale Law (Tax Sale Law).[1] Intending to give the highest protection to an owner-occupant of property subject to a tax sale, the legislature requires personal service of a notice of that sale by a sheriff or person chosen by formal resolution of the county. The tax claim bureau may request a court of *654 common pleas to grant a waiver of personal service for “good cause shown.” Section 601(a)(3), 72 P.S. § 6860.601(a)(3). Unlike the majority, I would not defer to the trial court’s legal conclusion that the Tax Claim Bureau’s petition established good cause for a Section 601(a)(3) waiver of personal service. Reviewing that question de novo, as is appropriate for any legal issue on appeal, I would conclude that three visits by the Bureau’s unqualified server-desig-nee to the owner-occupant’s house in a single week did not justify a waiver.
The sale of real property for unpaid taxes requires a series of notices to be given a property owner, and strict compliance is required in order to satisfy the demands of due process. See Section 602(a)-(g) of the Tax Sale Law, 72 P.S. § 5860.602(a)-(g). The first notice must be sent by certified mail at least 30 days in advance of the sale; provide details about the amount of tax delinquency; and give a warning, in large letters, of the consequences of non-payment. 72 ■ P.S. § 5860.602(e)(1), (g). If the tax claim bureau does not receive proof that the taxpayer has received the certified mailing, then it must undertake follow up measures. Specifically, it must post the property with notice of the sale and send a first-class letter to the taxpayer at least ten days before the sale. 72 P.S. § 6860.602(e)(2), (3). If the tax claim bureau doubts that the first-class letter has been effective, it must make a reasonable effort to locate the property owner. Section 607.1 of the Tax Sale Law, 72 P.S. § 5860.607a(a).[2] These notice requirements apply to the tax sale of every property, commercial or residential, rented or owner-occupied. Strict compliance is required. Smith v. Tax Claim Bureau of Pike County, 834 A.2d 1247, 1261 (Pa.Cmwlth.2003) (“Notice to owners of an impending sale of their properties is a duty requiring strict compliance in order to guard against the- deprivation of property without due-process.”).
Concluding that the Section 602 notices were not adequate in the case of real property occupied by the taxpayer, the legislature amended the Tax Sale Law in 2001 to add another requirement. Simply, where an owner-occupant taxpayer has not responded to the Section 602 notices by paying the overdue tax in full or in part, then the tax claim bureau must personally serve the owner-occupant with a notice of the impending sale. Specifically, Section 601(a)(3) states that
[n]o owner-occupied property may be sold unless the bureau has given the oumer occupant written notice of such sale at least ten (10) days prior to the date of the actual sale by personal service by the sheriff or his deputy or pei--son deputized by the sheriff .., unless the county commissioners, by resolution, appoint a person or persons to make all personal service required by this clause.
72 P.S. § 5860.601(a)(3) (emphasis added). The “personal service” required by Section 601(a)(3) can be effected at any place the server can find the owner-occupant. It need not take place at the owner’s residence, although that is a logical place to start.[3]
*655 The process followed by the Tax Claim Bureau and its “designated • server,” Palmetto Postings, Inc., turns this statutory scheme on its head. Every residential property scheduled for sale gets a visit from Palmetto Postings six weeks in advance of the sale. The Tax Sale Law, however, contemplates that personal service be made only where the home is occupied by its owner and only on the subset that has "not responded to the 30-day advance certified mailed notice with a payment in full or a payment plan. This is why the personal service deadline is ten days before the “actual .sale.” 72 P.S. § 5860.601(a)(3). Further, the Tax Sale Law contemplates personal service, not additional postings on, and visits to, the property, which is what Palmetto Postings did.[4]
The Tax Claim Bureau developed this triple posting system not to effect personal service on owner-occupants' but to estab: lish grounds for a waiver of the personal service requirement. The Tax Sale Law allows a waiver of personal service for good cause. Section 601(a)(3) provides, in relevant part, as follows:
If such personal notice cannot be served within twenty-five (25) days of the request by the bureau to make such personal service, the bureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown.
72 P.S. § 5860.601(a)(3). Additional!postings do not constitute “good cause” for a waiver of personal , service.
Although “personal service” is not defined in the Tax Sale Law, it is not a novel concept. It has long been used in our legal system and was,-no doubt, 'a, point of reference' .for our-. legislature in drafting Section 601(a)(3). Under the Pennsylvania Rules of Civil Procedure, personal service of original process is accomplished “by handing a copy [of the- original process] to the defendant” or by handing a copy to an adult at the defendant’s home or the person in ■ charge at the defendant’s “usual place of business.” Pa. R.C.P.' No. 402.
As is the ease with Section 601(a)(3), the Pennsylvania Rules of Civil Procedure permit a waiver of personal service for good cause circumstances:
(a) If service cannot be made under the applicable rule the plaintiff may move the court for a special order directing the method of service. The motion shall be accompanied by an affidavit stating the nature and extent of the investigation which has been made to determine-the whereabouts of the defendant ánd the reasons why service cannot be made.
Pa R.C.P. No. 430(a).[5] Attempts at personal service that have not been successful can be grounds for a waiver so long as those attempts reflect “practical efforts to serve the defendant under the circumstances.” 2 GoodRich Amram 2p § 430(a):l. *656 At that point, the court may order alternate service in lieu of personal service.
Here, Palmetto Postings visited Taxpayer’s home three times in a single week in the month of August during regular working hours, when Taxpayer was not there and not likely to be there. Palmetto' Postings-did not make a single attempt after 5:00 p.m. or on- the weekend, when someone was more likely to be'home. This does not constitute a practical effort at service, ie., “‘good cause shown.”
United States District Courts have construed the waiver authorized in Pennsylvania’s Rule of Civil Procedure 430(a) to mean that the plaintiff must make a practical effort at service before alternate service will be allowed.[6] Barbosa v. Dana Capital Group, Inc., Civ. A. No. 07-CV-1724, 2009 WL 902339, at *4 (E.D.Pa. Mar. 31, 2009), There is no magic number of attempts that will constitute a “practical effort.” Four attempts over the course of several weeks were held not sufficient because they were made on the same day of the week and two were made within the same hour. Id. at *6 (citing Calabro v. Leiner, 464 F.Supp.2d 470 (E.D.Pa.2006)). In Calabro, the District Court-held that
the plaintiff bears the burden of showing that she has undertaken practical efforts to serve the defendants under the circumstances, a burden which she is unable to meet in this case. Half-hearted attempts at service will not do. While the plaintiff, through the U.S. Marshal, has attempted service three times on the defendants, two were on the same day of the week — Tuesday, and the two that have listed times of attempted service took place around the same time of day, between 10:00 a.m. and 11:30. Aside from' the fact that the U.S. Marshal knocked on the door three times (presumably with some force) and received no answer, there is no evidence that defendants are attempting to evade service; nor is■ there any other indication why future attempts at service, at different times or on different days, would be futile. Plaintiff has, therefore, failed to meet her burden of showing that she has undertaken practical efforts to serve the defendants under the circumstances. .
Calabro, 464 F.Supp.2d at 473.
Here, Palmetto Postings made three trips to Taxpayer’s home in the same week and in the middle of the working day, ie., between the hours of 9:19 a.m. and 4:13 p.m. Taxpayer typically leaves her home bn weekdays around 7:20 a.m.’ and returns around 5:45 p.m. The Tax Claim Bureau did not allege in its waiver petition that Taxpayer was evading service or that a future attempt at service, say in the evening hours, would be futile. Palmetto Postings scheduled its visits to Taxpayer’s home at times convenient for its employee, not when it was likely to succeed in finding someone present there.
The Tax Claim Bureau’s waiver petition recited that “at least three (3) separate attempts have been made by the server designee on each property” listed in Exhibit A, which was a list of 97 properties, including Taxpayer’s home. Petition to Waive Requirement of Personal Service of Notice of Tax Sale, ¶ 5; Reproduced Record at 6a (R.R.-). The waiver petition offered neither averments nor affidavits that the Bureau’s “server designee” made a “practical” effort at service on a person, as opposed to a.property visit. When two attempts in the middle of the work day fail, it is time for the Tax Claim Bureau to *657 attempt service in the evening or on the weekend.[7]
The legislature requires personal service on an owner-occupant at least ten days “prior to the date of actual sale.” Section 601(a)(3) of the Tax Sale Law, 72- P.S. § 5860.601(a)(3).' It is serious about the tax claim bureau’s obligation to make personal service. This is why the legislature required the service be made by a sheriff or his deputy, ie., persons who have been serving process since before Pennsylvania joined the Union. Alternatively, a county can appoint another qualified person; however, the appointment is not to bé done casually but only by formal resolution. Because the legislature is serious about personal service, it also provided that a tax claim bureau’s excuse from the personal service requirement requires no less than a court order.
The waiver of personal service was to be the exception, not the rule. Here, the trial court concluded that the Tax Claim Bureau had “good cause” for a waiver because Palmetto Postings appeared three times at the property to be sold, during working hours and in the same week. If the legislature had wanted obtaining a waiver to be that simple, it would have so directed in the Tax Sale Law. Instead, it used the phrase “good cause shown.”
The trial court’s grant of the waiver was also erroneous because the Tax Claim Bureau’s “server designee” was not qualified to make or attempt personal service. Neither Palmetto Postings nor its employee, Valorie McDowell, was deputized by the Northumberland County Sheriff or appointed by the Northumberland County Commissioners to make personal service. The majority agrees with the purchaser’s tautological argument that the server’s qualification does not mattér because personal service can be waived.[8]
First, the legislature specified that a sheriff or deputy, ie., persons with knowledge and experience in serving legal documents, should be the person to make or attempt service. It allowed other persons to do this service but only if appointed by the county commissioners. In that appointment, the county commissioners are guided by the legislature’s decision that a sheriff was a person qualified for this job.
Second, the requirement that the service be undertaken by a sheriff, or county appointee, is absolutely necessary where the tax claim bureau’s “good cause” basis for requesting a waiver is that attempts at personal service have not been successful. Any attempt at-personal service is a nullity if it has not been done by a person qualified to make service in the first place.[9]
Taxpayer has also challenged the form of the notice, which stated, in bold and in large type, the amount of tax owed through August 31, 2013. However, only in fine print, without any bolding, and at *658 the very bottom of the form did the notice warn that the “Bureau will expose at Public Sale ... 399 S. 5th St., Sunbury, Pennsylvania, at 10:00 A.M.[,]. SeptembeR 18, 2013, or any day to which the sale may be adjourned, readjourned or continued, for the purpose of collecting unpaid taxes, municipal claim and all costs incidented there-to_” R.R. 113a (emphasis added). In In re Consolidated Return of the Tax Claim Bureau of County of Beaver, 105 A.3d 76, 81 n. 8 (Pa.Cmwlth.2014), several public interest groups, including AARP, the National Association of Consumer Advocates, and the National Consumer Law Center, filed amici curiae briefs arguing that due process requires a meaningful notice of a tax liability and a threatened tax sale. We did not address the sufficiency of the form of the notice in County of Beaver because the taxpayer won her appeal on other grounds. I agree with Taxpayer that the notice form posted on her property contains ambiguities and, thus, did not comport with due process. See, e.g., C.S. v. Department of Public Welfare, 879 A.2d 1274, 1280 (Pa.Cmwlth.2005) (equivocal notice to alleged perpetrator of child abuse that he “may” receive a hearing was inconsistent with his statutory and' due process right of appeal and, therefore, a breakdown in the administrative process warranting nunc pro tunc appeal).
Finally; I reject the majority’s conclusion that this Court owes deference to the trial court’s legal conclusion that the Tax Claim Bureau established “good cause” for a waiver of personal service under Section 601(a)(3) of the Tax Sale Law. The majority cites cases from this Court and the Superior Court for the' proposition. that “good cause shown” is a factual-based inquiry. Majority op. at 649-50 (citing Smith v. Borough of Morrisville (Pa.Cmwlth., No. 550 C.D. 2015, 2015 WL 6475144, filed October 23, 2015), and State Farm Insurance Companies v. Swantner, 406 Pa.Super. 235, 594 A,2d 316 (1991)). The majority also cites Trexler v. Unemployment Compensation Board of Review, 27 Pa.Cmwlth. 180, 365 A.2d 1341, 1344 (1976), for this proposition. Indeed, Trex-ler held that “good cause” is “not amenable to general rules or rigid formulas” but will be determined on a case-by-case basis. Id. 'Ironically, here, the trial court has established a “rigid formula,” i.e., three trips to a residential property by anyone designated by the Tax Claim Bureau, not the Sheriff or the County, constitutes “good cause shown” for a waiver of personal service.[10]
Whether a trial court reaches the proper legal conclusion on the evidence presented is a question of law. Commonwealth v. 1997 Chevrolet, 106 A.3d 836, 847 n. 9 (Pa.Cmwlth.2014), appeal granted sub nom., Commonwealth v. 1997 Chevrolet & Contents Seized from Young, — Pa. -, 120 A.3d 993 (2015). Likewise, a question of statutory interpretation is a question of law. Navickas v. Unemployment Compensation Board of Review, 567 Pa. 298, 787 A.2d 284, 288 (2001). As our Supreme Court has explained, the proper interpretation and application of language [in a contract] ... presents a question of law over which our scope of review is plenary and standard of review de novo." Pennsylvania National Mutual Ins. Co. v. St. John, — Pa. -, 106 A.3d 1 (2014). Likewise, the interpretation and application of language in a statute presents a question of law; accordingly, the trial *659 court is afforded no deference and its decision “will instead be reviewed de novo.” Id.
Our Supreme Court’s recent opinion in Gilbert v. Synagro Central, LLC, — Pa. -, 131 A.3d 1 (Pa.2015), illustrates this point. There, the Court was called upon to decide, inter alia, whether the trial court properly concluded that land application of biosolids as fertilizer was a “normal agricultural operation” for purposes of a statute of repose in Section 954(a) of the Right to Farm Act, 3 P.S. § 954(a).[11] The Court rejected the Superior Court’s reliance on cases that held that determining the applicability of a statute of repose was a fact-finding inquiry, to which the appellate court owes deference. The Gilbert court emphasized that the facts were undisputed; the only question was whether appellants met the statutory requirements of Section 954(a). The Court reasoned:
This question does not involve fact finding; it involves the application of a statute’s definition to the record’s facts.
It is well settled that determining whether an activity, entity, or object falls within the meaning of a statutory definition is a matter of statutory interpretation, and thus is a question of law for the court to decide.
Gilbert, 131 A.3d at 17.[12]
The majority’s response to Gilbert is that the interpretation of statutory language such as “good cause shown” that is left undefined by the legislature presents a “legal question,” the answer to which requires “a discretionary exercise by the trial courts.” Majority op. at 651 n.20. There is no question that a court exercises discretion and judgment when construing and applying a statute. But that does not mean the trial court is entitled to deference under an appellate standard of review. It goes without saying that a tribunal lacks discretion to construe a statute incorrectly. The application of the law to facts is a legal conclusion, and the appellate standard of review is de novo; no deference is owed to the tribunal below. See, e.g., Bowling v. Office of Open Records, 621 Pa. 133, 75 A.3d 453, 466 (2013) (“Because these issues are purely legal ones involving statutory interpretation, we *660 exercise a de novo standard of review and a plenary scope 'of review[.]”). See also In re Doe, 613 Pa. 339, 33 A.3d 615, 624 (2011) (explaining that questions of law are subject to de novo review, but fact-intensive inquiries are more suitable to deferential review)..
Here, the relevant facts on the attempts at service were undisputed. Palmetto Postings visited Taxpayer’s home on three occasions: August 5, 2013,. at . 1:21 p.m., August 8, 2013, at 4:13 p.m., and'August,9, 2013, at 9:19 a.m. The issue, on appeal is a .purely legal one: whether1 the trial court correctly waived the qualification requirement for a “server designee!’ and the requirement of personal service on. 97 owner-occupants for the petition’s stated grounds of three property visits. It is for this Court to decide whether the Tax Claim Bureau established “good cause shown” for a .waiver of personal service on the record facts. In deciding that issue, we do not owe deference to the trial court.
By affirming'the trial-court, this Court has established the paradigm for a waiver of personal service in all 67 counties: three property visits (i) in a single week in August (when owner-occupants often vacation), (ii)''between the hours of 9:19 a.m. and 4:10 p.m.,. and (iii) by any person, whether or not-qualified by virtue of being a member of the sheriffs office or having been appointed by the county commission,ers. Effectively, this replaces the personal service requirement with three visits to an owner-occupied property by anyone who can read and operate a vehicle,
At stake is a family home scheduled for a tax sale. It was the legislature’s intent that the sheriff, or server appointed by the county, notify the owner of that sale, át least ten days before' its occurrence, by placing a' notice into the hands of the owner-occupant. The Tax Claim Bureau made three visits to Taxpayer’s property. It did not make a practical effort at personal service upon Taxpayer herself. It did not designate a server qualified to "make personal service.
For these reasons, I would reverse the trial court’s order .and set aside the sale of Taxpayer’s home because the Tax Claim Bureau did not,.comply with the exacting standards of Sections 601 and 602 of the Tax Sale Law.

. Added by Section 30 óf the'Act of July 3, 1986, P.L. 351, 72 P.S. § 5860.607a(a).

. Personal service under the Rules of Civil Procedure can be effected by handing the document to an "adult” in the household or a person "in charge” at the "usual place of business” of the person to be served. See Pa. R.C.P. No. 402. Section 601(a)(3) of the Tax Sale Law does not specify the manner of personal service. It does not state that personal service can be effected by handing a copy of the written notice to an individual on the premises other 'than the owner-occupant. But this could be a reasonable interpretation of Section 601(a)(3).

. The three trips to Taxpayer’s property were not for the sole purpose of attempting personal service; one trip was also for the property posting. On August 9, 2013, at 9:19 a.m. Palmetto Postings (1) attempted the personal service required by Section 601(a)(3) of the Tax Sale Law, 72 P.S. § 5860.601(a)(3), and (2) posted the property as required by Section 602(e)(2), 72 P.S. § 5860.602(e)(2). Petition to Waive Requirement of Personal Service of Notice of Tax Sale, Exhibit B.

. Federal Rule of Civil Procedure 4(e)(1) permits service of initial pleadings by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made.”

.This is consistent with Section 607.1(a) of the Tax Sale Law, which requires the tax claim bureau to make "reasonable efforts to discover the whereabouts” of a taxpayer when notification sent to him is returned to the tax claim bureau "without the required receipted personal signature of thé addressee-” 72 P.S. § 5860.607a(a). Only when "reasonable efforts have been exhausted” may the property be "rescheduled for sale,” Id. In sum, a reasonable effort to comply with all notice requirements, including personal service, is a constant in the Tax Sale Law.

. The Tax Claim Bureau did not participate in this appeal. The purchaser, which intervened in the trial court proceeding, is the party that filed a response to Taxpayer’s brief.

. Not all waiver petitions will be based upon failed attempts at service. For example, a tax claim bureau may seek a "good cause” waiver because the owner-occupant is away on a yearlong ocean voyage.

, When considering failed attempt at service as grounds for a waiver, there is no magic number that will suffice. A single attempt may suffice where, for example, the owner-occupant puts his hands in his pocket when the deputy sheriff attempts to hand him the tax sale notice or refuses to answer the door.

. Act of June 10, 1982, P.L. 454, as amended, 3 P.S. § 954(a).

. The Supreme Court cited numerous examples that bear repeating here. See, e.g., Meyer v. Community College of Beaver County, 625 Pa. 563, 93 A.3d 806, 812-13 (2014) (whether political subdivision agency is "person,” as defined by Pennsylvania Unfair Trade Practices and Consumer Protection Law, is matter of statutory interpretation and, therefore, "a pure question of law”); Glatfelter Pulpwood Co. v. Commonwealth, 619 Pa. 243, 61 A.3d 993, 998 (2013) (whether particular out-of-state timber sale constitutes "business income,” as defined by Pennsylvania’s Tax Reform Code of 1971, is question of law); Dechert LLP v. Commonwealth, 606 Pa. 334, 998 A.2d 575, 579 (2010) (whether canned computer software constitutes "tangible personal property,” within definition provided by Pennsylvania Tax Reform Code of 1971, "is an issue of statutory construction, which is a pure question of law”); E.D.B. ex rel. D.B. v. Clair, 605 Pa. 73, 987 A.2d 681, 683-84 (2009) (whether minor child qualifies as “beneficiary” of medical assistance, as defined by Pennsylvania Fraud and Abuse Control Act of 1980, is question of law); Rendell v. Pennsylvania State Ethics Commission, 603 Pa. 292, 983 A.2d 708, 712-13 (2009) (whether nonprofit corporation constitutes "business,” within definition provided by § 1102 of Pennsylvania's Public Official and Employee Ethics Act, is issue of “statutory interpretation [and] therefore a question of law”). To this exhaustive list I would add a question with which this Court is eminently familiar, i.e., whether an employee's activity constitutes "willful misconduct” in an unemployment case. Because the term "willful misconduct” is not defined in the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §§ 751-914, our courts have defined the term for purposes of that inquiry.